UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK PERRY, | No. 2:18-cv-0718-MCE-EFB P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ROBERT FOX, | |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On October 31, 2014, petitioner was convicted of elder abuse and assault with a stun gun. The jury also found true the allegation that petitioner had inflicted great bodily injury on a person over the age of seventy. He now raises a single ground for relief in his petition: that the admission of expert testimony by the prosecution violated his federal due process rights. For the reasons stated hereafter, the petition should be denied.

BACKGROUND

The victim – seventy-six-year-old Elias Carranco – worked as a parking attendant at a Stockton parking lot. The parking lot was situated near an apartment complex which petitioner frequented. On June 24, 2014, Carranco made ready to leave the parking lot in his vehicle. Carranco's exit was blocked, however, because petitioner was standing near the parking lot exit with his bicycle. Carranco asked petitioner to move, but he would not comply. Petitioner

1

claimed that, after the two reached an impasse, Carranco used his vehicle to forcibly edge petitioner's bicycle forward. Petitioner's leg was pushed beneath the front bumper of the vehicle and the bicycle was toppled. Petitioner picked up the bicycle, screamed at Carranco, and moved to throw the bicycle at the vehicle. Carranco responded by driving forward and striking the bicycle, which caused the handlebar to strike petitioner in the face. Petitioner then walked to the driver's side of the vehicle and punched Carranco. Carranco drove a short distance away and called police to report the incident. Police took a report, but no one was arrested that day.

The following day, petitioner was seen with a taser moving from the apartment complex toward the parking lot where Carranco worked. Shortly thereafter, he was seen returning to the apartments. Minutes after petitioner's return to the apartments, Carranco was discovered on the ground, eyes closed, in a pool of blood. He would eventually open his eyes, but proved incoherent and unable to explain what had befallen him. Carranco was taken to a hospital and treated for a ruptured ear drum, a fractured skull, and a brain bleed.

At trial, the prosecution presented testimony from expert witness Ed Obayashi - the lead instructor for the Internal Affairs Investigation Course at Alameda Regional Training Center. Part of his course at the training center centered on Taser use of force, including: (1) analysis of video evidence involving Taser discharge; (2) the characteristic effects of Taser use on a victim's physiology; and (3) the falling patterns of Taser victims. Obayashi showed jurors an example video of a man having a Taser used against him. He pointed out how the victim's body went stiff and rendered incapable of doing anything other than falling. Obayashi explained that only a Taser would cause an individual to fall helplessly backwards without any attempt to break the fall.

Next and in the presence of the jury, Obayashi reviewed a surveillance video of the June 25, 2014 incident. He pointed out similarities between the victim's fall and the example video. Obayashi offered his opinion that the victim was most likely attacked with a Taser. Obayashi had no information – other than a hospital report which he reviewed for physical evidence of Taser use – as to the identity of the victim or suspect, nor did he have any other background information about the incident.

2

# STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

A. "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*,

3

538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

> B. "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

4

contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738

(emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 131 S. Ct. at 786.

    C.    <u>"Unreasonable Determination Of The Facts"</u>

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). <u>Id.</u> at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper

/////

6

determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II. <u>The Relationship Of § 2254(d) To Final Merits Adjudication</u>

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736-37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1)

/////

7

unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

Petitioner argues that the trial court violated his due process rights by admitting Obayashi's opinion testimony as to whether Carranco had been struck with a taser.

I. <u>Last Reasoned State Decision</u>

The California Court of Appeal rejected this claim in a reasoned decision issued on direct appeal:

> Defendant contends the trial court erred in allowing Obayashi to testify that Carranco had been "Tased." According to defendant, this was a main issue of contention during trial and Obayashi's opinion usurped the jury's function to decide the case. The People disagree, contending Obayashi's opinion was not a legal conclusion as to defendant's guilt.
>
> Expert opinion testimony must be "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Such testimony is "not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805; *People v. Torres* (1995) 33 Cal.App.4th 37, 47 ["[o]pinion testimony often goes to the ultimate issue in the case"].) For example, an expert may testify as to: (a) the speed of a car leaving skid marks measured at an auto accident scene; (b) what circumstances might cause hemorrhaging found in the eyes during an autopsy of a suspected homicide victim; (c) the presence of a particular tattoo shows the person belongs to a gang; or (d) how an injury might be caused or its potential long-term effects, and whether the party was still suffering from the effects of the injury. (*People v. Sanchez* (2016) 63 Cal.4th 665, 675-677.) Still, an expert's opinion may not invade the province of the jury to decide a case, such as expressing an opinion as to defendant's guilt or innocence or whether a crime has been committed. (*Torres*, at pp. 46-47.) Such opinions are " ' "inadmissible because they are of no assistance to the trier of fact.

> To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." ' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)
>
> Despite defendant's contentions, Obayashi's opinion regarding the likely cause of the victim's fall in the video did not usurp the jury's role. The physiological effects of a Taser on a victim and whether an individual is behaving as though they have been "Tased," are sufficiently beyond common experience that testimony from an expert such as Obayashi would assist the jury in determining the cause of the victim's fall in the video. (*See*, *e.g.*, *People v. Sanchez*, *supra*, 63 Cal.4th at pp. 675-677.)
>
> In addition, Obayashi had no evidence of the identity of the individuals in the video, and the prosecution never asked Obayashi whether defendant was guilty. Accordingly, it remained with the jury to decide whether Carranco was the victim, whether defendant was the attacker, and whether defendant "Tased" Carranco. It is true that Obayashi's opinion, if found credible, might, together with the rest of the evidence, cause the jury to find defendant used a Taser on Carranco. " 'But this circumstance makes the testimony probative, not inadmissible.' " (*People v. Vang*, *supra*, 52 Cal.4th at pp. 1048-1049.) We find no error.

Lodg. Doc. 10 at 3-5 (quotation marks in original).

## II. Clearly Established Federal Law

A claim that evidence was improperly admitted under state law cannot, on its own, give rise to Federal habeas relief insofar as such relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). And the Supreme Court has long acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). A petitioner arguing that an evidentiary ruling was erroneous can attain federal habeas relief only if he can demonstrate that the evidentiary error rendered his trial fundamentally unfair. *See Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999).

## III. Analysis

Petitioner fails to carry his burden of demonstrating that the admission of Obayashi's testimony rendered his trial fundamentally unfair. As the state court of appeal correctly noted, Obayashi offered no testimony as to whether petitioner was guilty. Rather, he offered testimony as to whether the victim was "Tased." Concededly, this secondary question was ultimately an issue of fact to be resolved by the jury. However, the Ninth Circuit has recognized that

9

"[a]lthough [a] witness is not permitted to give a direct opinion about the defendant's guilt or innocence . . . . an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact." *Moses v. Payne*, 543 F.3d 1090, 1106 (9th Cir. 2008) (quoting *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990)); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (it is "well-established . . . that expert testimony concerning an ultimate issue is not per se improper."). And, as to the issue of established federal law, the Ninth Circuit has noted that "we have found no cases support[ing] the general proposition that the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact." *Briceno v. Scribner*, 555 F.3d 1069, 1077 (9th Cir. 2009) (quoting *Moses*, 543 F.3d at 1105)). Petitioner has not pointed to any Supreme Court case supporting the opposite proposition. This is unsurprising given that, more broadly, "[the Supreme Court] has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Rather, the admission of evidence violates due process "only if there are no permissible inferences" the jury may draw from it. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Here, there was clearly at least one permissible inference which the jury could draw from Obayashi's testimony – namely that the victim's injuries were caused by someone using a Taser. If the jury credited Obayashi's testimony it could then have concluded that it was more likely that petitioner - whom witnesses had previously observed with a Taser - was responsible for victim's injuries.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: July 24, 2019.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE